UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) ) ) ) ) | |
| v. | ) ) ) ) ) ) ) ) ) ) | Criminal No. 23-cr-10053-DJC |
| REY DAVID FULCAR, | | |
| Defendant. | | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                            **October 27, 2023**

**I.      Introduction**

Defendant Rey David Fulcar ("Fulcar") has moved to dismiss the indictment. D. 52. He argues the indictment should be dismissed because the statute underlying Count I of the indictment, 18 U.S.C. § 922(g)(1), is unconstitutional in light of the Supreme Court's decision in New York State Rifle & Pistol Ass'n v. Bruen, __ U.S. __, 142 S. Ct. 2111 (2022). As Fulcar's counsel acknowledged at the motion hearing, such motion only applies to Count I, the felon in possession charge, not the drug charges, Counts II and III, charged under 21 U.S.C. § 841(a)(1). Having considered the motion and supporting memorandum, D. 52, the government's opposition, D. 60, and oral argument, D. 65, the Court DENIES the motion.

**II.     Legal Standards**

A defendant may seek the dismissal of an indictment on the grounds that the statute authorizing the charges is unconstitutional. See, e.g., United States v. Carter, 752 F.3d 8, 12 (1st Cir. 2014) (considering a defendant's motion to dismiss an indictment raising a constitutional

1

challenge under § 922(g)(9)).  Such challenge may be to the constitutionality of a statute facially or as-applied.  To succeed on a facial attack, the moving party must demonstrate "that the statute lacks any 'plainly legitimate sweep.'"  Hightower v. City of Boston, 693 F.3d 61, 77–78 (1st Cir. 2012) (quoting United States v. Stevens, 559 U.S. 460, 472 (2010)).  To succeed on an as-applied challenge, the defendant must show that the statute is unconstitutional as applied to the particular circumstances of his case.  See id. at 71–72.

### III. Factual Background and Procedural History

The Court incorporates by reference the alleged facts summarized in its August 10, 2023 Memorandum and Order on Fulcar's motion to suppress, D. 50, and repeats here only those alleged facts relevant to Fulcar's motion to dismiss.  D. 52.

On July 23, 2022, officers with the Boston Police Department arrested Fulcar for the suspected distribution of controlled substances.  D. 40-1 ¶¶ 13–14.  Shortly thereafter, pursuant to a search warrant, officers searched his residence at 126 Main Street, Apartment 2, in Quincy.  D. 40-2; D. 40-3.  There, the officers found (and seized) a Black Ruger .380 semi-automatic firearm and seven rounds of .380 ammunition, along with other items.[1]  D. 40-3.  According to an affidavit in support of the search warrant for Fulcar's residence, D. 40-1 ¶ 8, and the March 10, 2023 Detention Order (Boal, M.J.), D. 17 at 3, Fulcar's criminal history at the time included the following convictions under Massachusetts law:  armed assault with intent to murder; assault and battery with a dangerous weapon; unlawful carrying of a loaded firearm; possession of a firearm without a permit; and assault and battery on a police officer.  He also had prior convictions for

---

[1] Officers also seized 2.6 grams of cocaine, 38.6 grams of suspected crack cocaine, a large plastic bag containing 41 grams of fentanyl, a small plastic bag containing 3.5 grams of fentanyl, .2 grams of crack cocaine, 56 suboxone strips and a drug ledger.  D. 40-3.

drug distribution, including trafficking over 28 grams of a Class B substance (cocaine) and possession to distribute a Class A substance.  D. 40-1 ¶ 8.

On March 1, 2023, a grand jury returned an indictment charging Fulcar with one count of felon in possession of firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) (Count I) and two counts of possession of controlled substances with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (Counts II and III).  D. 1.  Fulcar has moved to dismiss relying on Bruen, 142 S. Ct. at 2111, which provides grounds to challenge only Count I, the felon in possession charge under § 922(g)(1).  D. 52.

**IV.   Discussion**

Fulcar argues that § 922(g)(1) is unconstitutional under the Second Amendment in light of Bruen, 142 S. Ct. at 2111.  D. 52.  Section 922(g)(1) provides, in relevant part, that "[i]t shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year to . . . possess in or affecting commerce, any firearm or ammunition."  Fulcar challenges the constitutionality of § 922(g)(1) facially and as-applied to the circumstances of his case.  See D. 52 at 3.

**A.   Developments in the Supreme Court's Second Amendment Jurisprudence**

Because Fulcar's argument rests on modern developments in the Supreme Court's Second Amendment jurisprudence, this Court briefly discusses the three cases that define this changing landscape:  District of Columbia v. Heller, 554 U.S. 570 (2008), McDonald v. City of Chicago, Illinois, 561 U.S. 742 (2010) and Bruen, 142 S. Ct. at 2111.

In Heller, 554 U.S. at 574–76, the Supreme Court considered the constitutionality of certain restrictions imposed by the District of Columbia on the possession of firearms in the home.  The majority explained that the Second Amendment ought to be construed as two discrete clauses:  the

prefatory clause ("[a] well regulated Militia, being necessary to the security of a free State") and the operative clause ("the right of the people to keep and bear Arms"). Id. at 577–78. Adding that the prefatory clause does not limit the operative clause, the Court recognized "a strong presumption that the Second Amendment right is exercised individually and belongs to all Americans"—as opposed to a collective right belonging only to "an organized militia." Id. at 578, 580–81. The Court then turned to the substance of the right, "to keep and bear Arms." Id. at 581. After surveying founding-era sources to determine the clause's historical meaning, the Court construed the operative clause of the Second Amendment to guarantee an "individual right to possess and carry weapons in case of confrontation." Id. at 581–86, 592. Applying this principle, the Court held that the District of Columbia's firearm restrictions violated the Second Amendment. Id. at 628–31, 635–36.

In reaching its holding, the Court cautioned that "the right secured by the Second Amendment is not unlimited." Id. at 626. "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id. at 626–27. "We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." Id. at 627 n.26.

Two years later, in McDonald, 561 U.S. at 749–50, the Supreme Court considered whether to extend its holding in Heller—which had only applied against the federal government—to the states. The Court answered in the affirmative, concluding "that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in Heller." Id. at 791. The Court reiterated, "[w]e made it clear in Heller that our holding did not cast doubt on such

4

longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill,' 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.'" Id. at 786 (quoting Heller, 554 U.S. at 626–27).

Last year, the Supreme Court decided Bruen, 142 S. Ct. at 2111. There, the petitioners had challenged a New York licensing scheme under which the government conditioned the issuance of a license to carry a firearm on a citizen's showing of some special need—to be assessed by licensing officials—in addition to statutory criteria. Id. at 2122–24. Before analyzing the constitutionality of the New York scheme, the Court sought to clarify the appropriate standard. Id. at 2125–26. The Court noted that the Courts of Appeals had misapplied its decisions in Heller and McDonald by applying "means-end scrutiny" when analyzing Second Amendment claims, i.e., balancing the historic Second Amendment right against the government's interest in regulation. Id. at 2126–27.

After explaining that "Heller and McDonald do not support applying means-end scrutiny," id. at 2127, and that Heller relied upon "text and history," id. at 2129, the Court "reiterate[d]" that the standard for applying the Second Amendment is: "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct" and "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." Id. at 2129–30.

B.       **First Circuit Precedent**

As the government notes, Bruen did not reverse binding First Circuit precedent affirming the constitutionality of § 922(g)(1). D. 60 at 3–5. "Until a court of appeals revokes a binding precedent, a district court within the circuit is hard put to ignore that precedent unless it has

unmistakably been cast into disrepute by supervening authority." Eulitt v. Maine, Dep't of Educ., 386 F.3d 344, 349 (1st Cir. 2004), abrogation on other grounds recognized by Carson as Next Friend of O.C. v. Makin, 142 S. Ct. 1987 (2022). The relevant First Circuit precedent here is United States v. Torres-Rosario, 658 F.3d 110 (1st Cir. 2011). There, the First Circuit considered a challenge to the constitutionality of § 922(g)(1) under Heller and McDonald. Id. at 112. The First Circuit rejected that challenge, explaining that neither decision "cast doubt on such longstanding regulatory measures as prohibition on the possession of firearms by felons." Id. at 112–13 (quoting McDonald, 561 U.S. at 786).

The First Circuit's decision in Torres-Rosario has not been overruled by Bruen, at least for the following reasons. See Eulitt, 386 F.3d at 349. First, the question before the Supreme Court in Bruen was the constitutionality of New York's licensing scheme for the public carry of firearms, not the constitutionality § 922(g)(1). By contrast, the constitutionality of § 922(g)(1) was squarely before the First Circuit in Torres-Rosario. Second, in affirming the constitutionality of § 922(g)(1) in Torres-Rosario, the First Circuit relied upon the Supreme Court's emphasis in Heller and McDonald that such decisions did not cast doubt on such prohibitions. Torres-Rosario, 658 F.3d at 112–13 (quoting McDonald, 561 U.S. at 786). Bruen left these assurances undisturbed, instead abrogating the application of "means-end scrutiny." See Bruen 142 S. Ct. at 2126–27. Third, the concurrences and the dissent in Bruen indicate that at least six of the Justices at the time (and five of the current Justices) read the majority opinion as maintaining the status quo as to the constitutionality of felon in possession laws like § 922(g)(1). See Bruen, 142 S. Ct. at 2157 (Alito, J., concurring) (explaining that "[n]or have we disturbed anything that we said in Heller or McDonald . . . about restrictions that may be imposed on the possession or carrying of guns"); id. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) (reiterating Heller and McDonald's

assurances that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ."); id. at 2189 (Breyer, J., joined by Sotomayor and Kagan, JJ., dissenting) (agreeing with Justice Kavanaugh that the majority opinion did not cast doubt on Heller's holding as to the presumptive lawfulness of felon in possession laws).

Fourth, although the First Circuit has yet to consider Bruen's impact on Torres-Rosario, other district courts in this Circuit have addressed the same issue and concluded that Torres-Rosario remains controlling precedent and dispositive of constitutional challenges like the one brought by Fulcar. See United States v. Giambro, No. 2:22-cr-00044-GZS, 2023 WL 3727673, at *2 (D. Me. May 30, 2023) (rejecting a constitutional challenge to § 922(g)(1) because "Bruen has not unmistakably . . . cast" the First Circuit's decision in Torres-Rosario "into disrepute") (internal citation and quotation marks omitted); United States v. Belin, No. 21-cr-10040-RWZ, 2023 WL 2354900, at *1 (D. Mass. Mar. 2, 2023) (concluding that "the First Circuit's rejection of a constitutional challenge to § 922(g)(1) remains controlling precedent" post-Bruen); United States v. Trinidad, No. 21-398 (SCC), 2022 WL 10067519, at *2 (D.P.R. Oct. 17, 2022) (explaining that "Bruen has not disturbed Torres-Rosario"). This Court has previously concluded the same, see United States v. Davis, No. 23-cr-10018-DJC (D. Mass. Mar. 17, 2023), D. 49, and sees no reason to now depart from emerging intra-circuit consensus. Accordingly, the Court holds that Torres-Rosario forecloses Fulcar's attack on the facial validity of § 922(g)(1).

Having concluded that the First Circuit's decision in Torres-Rosario remains good law post-Bruen, Fulcar's as-applied challenge to § 922(g)(1) fares no better than his facial attack. In Torres-Rosario, 658 F.3d at 113, the First Circuit acknowledged that the Supreme Court may be open to the possibility of as-applied challenges to the constitutionality § 922(g)(1) but emphasized that this openness would be limited to cases where the underlying felony is "so tame and technical

as to be insufficient to justify the ban." Fulcar's criminal history includes offenses that this Court cannot dismiss as "tame" or "technical," such as armed assault with intent to murder, assault and battery with a dangerous weapon, assault and battery on a police officer, and other serious offenses. See D. 17 at 3; D. 40-1 ¶ 8. For instance, his record includes convictions for drug distribution, D. 40-1 ¶ 8, crimes which the First Circuit described in Torres-Rosario, 658 F.3d at 113, as "notoriously linked to violence." Thus, Fulcar's as-applied challenge to the constitutionality of § 922(g)(1) is foreclosed by considering First Circuit precedent as well.[2]

### C. *Bruen* Analysis

Even assuming *arguendo* that Torres-Rosario is no longer binding precedent, the Court is not convinced that Fulcar's challenges to § 922(g)(1)'s constitutionality would be meritorious under Bruen. Courts applying Bruen have done so in two steps. See, e.g., Giambro, No. 2:22-cr-00044-GZS, 2023 WL 3727673, at *3 (considering whether the Second Amendment's plain text covers the conduct proscribed by § 922(g)(1) "[a]t the first step" of Bruen before "proceed[ing] to evaluate whether the Government has sufficiently demonstrated that felon disarmament is 'consistent with the Nation's historical tradition of firearm regulation'") (quoting Bruen, 142 S. Ct. at 2130). First, the Court assesses whether "the Second Amendment's plain text covers an individual's conduct." Bruen, 142 S. Ct. at 2129–30. Assuming it does, the burdens falls upon the government to establish that the challenged law "is consistent with the Nation's historical tradition of firearm regulation." Id. at 2130.

---

[2] District courts in the First Circuit have generally agreed that Torres-Rosario obviates the need to analyze as-applied challenges to § 922(g)(1) under Bruen. See United States v. Giambro, No. 2:22-cr-00044-GZS, 2023 WL 3727673, at *3 (D. Me. May 30, 2023); Trinidad, No. 21-398 (SCC), 2022 WL 10067519, at *2–3. However, one court in this circuit has concluded that Torres-Rosario "cannot be read to prevent felons from bringing as-applied challenges" under Bruen. See United States v. Levasseur, No. 22-cr-00155-LEW, 2023 WL 6623165, at *4 (D. Me. Oct. 11, 2023).

*1.     The Second Amendment's Plain Text Does Not Cover Fulcar's Conduct*

The Second Amendment guarantees "the right of the people to keep and bear Arms." U.S. Const. amend. II. Fulcar argues that the Second Amendment's reference to "the people" necessarily includes individuals who have committed felonies. D. 52 at 6–8. The Supreme Court in Bruen, however, repeatedly used the phrase "law-abiding citizens" in reference to the holders of the Second Amendment right.[3] See Bruen, 142 S. Ct. at 2122, 2125, 2131, 2133–34, 2135 n.8, 2138 & n.9, 2150, 2156. Although the Supreme Court did not elaborate upon the meaning of this phrase, "law-abiding citizens" does not plainly refer to individuals convicted of felonies. See Giambro, No. 2:22-cr-00044-GZS, 2023 WL 3727673, at *3 (reasoning that "Defendant is not an 'ordinary law-abiding citizen but rather a convicted felon'" and that "[h]e therefore falls outside the scope of the Second Amendment's protections") (citation omitted); Belin, No. 21-CR-10040-RWZ, 2023 WL 2354900, at *2 (concluding that "the activity regulated by the felon in possession statute falls outside the scope of the Second Amendment's protections because it does not impact 'law-abiding, responsible citizens'") (citation omitted).

---

[3] To support his argument that convicted felons fall within the ambit of the Second Amendment, Fulcar cites a passage from Heller where the Supreme Court construed "the people" to convey a "strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." Heller, 554 U.S. at 581; see D. 52 at 7. Read in context, however, it becomes clear that the Court was not referring to whether individuals convicted of felonies are among "the people" for purposes of the Second Amendment; rather, the Court was emphasizing that the Second Amendment right was not a collective right belonging to "organized militia" but an "individual one" to be enjoyed by individual Americans. Id. at 580–81. The Court also described its characterization of the right as belonging to "all Americans" as a "presumption," thus alluding to a limited set of circumstances where some Americans may not be entitled to Second Amendment rights. Id. at 581. As the Heller Court made clear elsewhere in its decision—and as the Bruen Court reinforced with its repeated use of the phrase "law-abiding citizens"—its concern was with "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." Id. at 635.

### 2. Section 922(g)(1) Is Consistent with the Nation's Historical Tradition of Firearm Regulation

Even assuming *arguendo* that convicted felons are entitled to the protections of the Second Amendment, the government has met its burden under the second step of the Bruen analysis. At this step, the burden falls upon the government to demonstrate that the challenged law is "consistent with the Nation's historical tradition of firearm regulation." Bruen, 142 S. Ct. at 2130. The government's task is to "identify a well-established and representative historical *analogue*, not a historical *twin*." Bruen, 142 S. Ct. at 2133 (emphasis in original). When reviewing the government's historical sources, it is not this Court's job "to resolve historical questions in the abstract" but to "resolve *legal* questions" and to do so according to "the principle of party presentation." Id. at 2130 n.6 (emphasis in original).

Here, the government's proffered historical analogs to § 922(g)(1) include laws authorizing capital punishment and estate forfeiture for individuals in the American colonies convicted of felonies. D. 60 at 10–12. The government cites William Blackstone, who defined a felony as "an offence which occasions a total forfeiture of either lands, or goods, or both, at the common law; and to which capital or other punishment may be superadded, according to the degree of guilt." 4 William Blackstone, Commentaries on the Laws of England 95 (1769). According to Blackstone, "[t]he idea of felony is so generally connected with that of capital punishment, that we find it hard to separate them." Id. at 98. The government also relates the legislative activity of the First Congress, which drafted and proposed the Second Amendment. See D. 60 at 10. The First Congress made a variety of violent and non-violent felonies punishable by death, including treason, murder on federal land, forgery, counterfeiting, uttering a forged or counterfeited public security, and piracy on the high seas. See An Act for the Punishment of Certain Crimes Against the United States, 1 Stat. 112, 112–15 (1790); see also Folajtar v. Att'y Gen. of the United States,

10

980 F.3d 897, 904 (3d Cir. 2020) (collecting historical sources documenting the "widespread, continued condemnation of felons, including those who committed non-violent offenses, to death" in the American colonies during the eighteenth century), abrogation recognized by Range v. Att'y Gen. United States of Am., 69 F.4th 96 (3d Cir. 2023).  The government also cites scholarship documenting how many American jurisdictions authorized estate forfeiture as a form of criminal punishment through the end of the 18th century.  See, e.g., Beth A. Colgan, Reviving the Excessive Fines Clause, 102 Cal. L. Rev. 277, 332 nn.275–76 (2014) (collecting statutes).

Fulcar cites the legislative history of § 922(g)(1), noting that it was not enacted until 1938. D. 52 at 2; see United States v. Booker, 644 F.3d 12, 23–24 (1st Cir. 2011).  At oral argument, defense counsel also cited United States v. Harrison, No. CR-22-00328-PRW, 2023 WL 1771138, at *12 (W.D. Okla. Feb. 3, 2023) for the proposition that "no scholar has been able to identify a single colonial or state law in seventeenth, eighteenth, or nineteenth-century America that prohibited a person from possessing any firearm merely because that person engaged in conduct that a legislature has labeled as felonious."  Id.  The First Circuit has similarly observed that § 922(g)(1) "is firmly rooted in the twentieth century and likely bears little resemblance to laws in effect at the time the Second Amendment was ratified." Booker, 644 F.3d at 23–24.  But as noted, the government need not produce a historical twin of § 922(g)(1) to carry its burden under Bruen; it need only identify a historical analog that imposed a comparable burden on the Second Amendment right that was comparably justified.  See Bruen, 142 S. Ct. at 2118.  While the government's historical precursors—capital punishment and estate forfeiture—do not specifically concern the regulation of firearms, "it is difficult to conclude that the public, in 1791, would have understood someone facing death and estate forfeiture to be within the scope of those entitled to possess arms."  Medina v. Whitaker, 913 F.3d 152, 158 (D.C. Cir. 2019); see United States v.

11

White, No. 23-CR-140 (NSR), 2023 WL 6066201, at *6 (S.D.N.Y. Sept. 18, 2023) (observing that "[i]t is a difficult row to hoe to suggest the generation that drafted and enacted the Second Amendment could countenance capital punishment for a non-violent felony, but not a prohibition on the possession of arms and ammunition"). Like § 922(g)(1), these historic laws necessarily deprived convicted felons of firearm possession and served the similar ends of penalizing the commission of felonies and protecting society from the threats posed by convicted felons. Thus, while § 922(g)(1) is not a "dead ringer" for the government's historical precursors, it is "analogous enough to pass constitutional muster."[4] Bruen, 142 S. Ct. at 2133. Because Fulcar has not shown that the statute lacks any plainly legitimate sweep, his facial challenge is unavailing under Bruen. See Hightower, 693 F.3d at 77–78.[5]

### 3.   *Fulcar's As-Applied Challenge Also Fails Under Bruen*

Fulcar's as-applied challenge to § 922(g)(1) also fails under Bruen. Fulcar cites a number of decisions where courts post-Bruen have held § 922(g)(1) to be unconstitutional as-applied. See D. 52 at 2, 6 (citing Range, 69 F.4th at 96 and United States v. Bullock, No. 3:18-CR-165-CWR-FKB, 2023 WL 4232309 (S.D. Miss. June 28, 2023)). These cases are not binding upon this Court; as already discussed, controlling First Circuit precedent forecloses Fulcar's as-applied challenge because his criminal history includes convictions for offenses that cannot be described as "tame" or "technical." Torres-Rosario, 658 F.3d at 113. The cases cited by Fulcar are also distinguishable. For instance, in Range, 69 F.4th at 106, the Third Circuit held § 922(g)(1) to be unconstitutional

---

[4] The Court is aware that the history proffered by the government is the subject of some debate. See Range, 69 F.4th at 126 (Krause, J., dissenting); Kanter v. Barr, 919 F.3d 437, 452 (7th Cir. 2019) (Barrett, J., dissenting). In light of the government's proffer of historical evidence, however, the Court is satisfied that the government has met its burden here.

[5] As the government notes in an appendix to its opposition, D. 60-1, numerous courts beyond this Circuit also have rejected Bruen challenges to § 922(g)(1).

as-applied but also emphasized that its decision was "a narrow one." Moreover, the underlying offense in that case was "one count of making a false statement to obtain food stamps in violation of Pennsylvania law." Id. at 98. By contrast, here, Fulcar's convictions include, *inter alia*, armed assault with intent to murder. D. 17 at 3; D. 40-1 ¶ 8; see Levasseur, 2023 WL 6623165, at *8–9 (concluding that "the historical record supports disarming persons seen as dangerous" and that the defendant's prior drug felony made him "sufficiently dangerous that he may constitutionally be disarmed"); see also United States v. Florentino, No. 22-10166, 2023 WL 7036314, at *2 (D. Mass. Oct. 26, 2023) (concluding that "[e]ven if some felons" were covered by the Second Amendment, the defendant's as-applied challenge fails given that his gun trafficking conviction is not "so tame and technical as to be insufficient to justify" a ban on firearm possession) (citing Torres-Rosario, 658 F.3d at 113). As for Bullock, 2023 WL 4232309, at *29–30, the district court concluded that the government had failed to carry its burden where it filed insufficient briefing and where "[m]issing from this brief . . . [was] any example of how American history supports § 922(g)(1)." Here, as previously discussed, the government has proffered historical sources to sustain its burden. See D. 60 at 10–12. For all of these reasons, Fulcar's as-applied challenge to § 922(g)(1) also fails.

## V. Conclusion

For the foregoing reasons, the Court DENIES Fulcar's motion to dismiss Count I (the § 922(g)(1) charge) or Counts II and III, the other drug charges under § 841(a)(1) to which his Bruen arguments do not apply. D. 52.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge